FILED
2022 Jan-03  PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **VICKIE LEMONS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:20-CV-1267-RDP** |
| | } | |
| **KILOLO KIJAKAZI, Acting** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Vickie Lemons brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## I.    Proceedings Below

Plaintiff filed her application for disability and DIB on May 5, 2017. (Tr. 199, 326). In her application, Plaintiff alleges her disability began on May 1, 2016. (Tr. 201, 364). The Social Security Administration denied Plaintiff's application on May 26, 2017. (Tr. 198-214). Thereafter, on July 10, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 217-19). Plaintiff's request was granted and on February 20, 2019, a video

hearing was held with ALJ Michael Mannes.[1]  (Tr. 239, 144-75).  Plaintiff, her attorney, and Vocational Expert, Diana Kizer, were in attendance. (Tr. 146). On August 12, 2019, the ALJ issued a decision unfavorable to Plaintiff.  (107-25).  After the Appeals Council denied Plaintiff's request for review (Tr. 1-7), the ALJ's decision became final, and therefore, subject to appellate review by this court.

At the time of the hearing, Plaintiff was 53 years old.  (Tr. 326).  Plaintiff has a high school education, and the following previous work experience: a cook and dishwasher in a fast food restaurant; handling customer service and stocking shelves in a feed store; a sales associate at Walmart; and a temporary clerical employee in the state unemployment office.  (Tr. 54-56, 358).  Plaintiff alleges that on May 1, 2016, due to her anxiety, depression, degenerative disc disease, and fibromyalgia, she became unable to work.  (Tr. 198).

On May 22, 2017, Plaintiff completed a Function Report and in that reported her average day consists of waking up and going to her part-time job, then coming home to clean the house, wash clothes, and pick up her grandchildren from school.[2]  (Tr. 385).  Plaintiff specifically states that her condition affects her ability to work full time, relax, and bend.  (Tr. 386).  Plaintiff also notes that her condition affects her ability to fall asleep because her mind is always racing, and she needs to get up throughout the night.  (*Id.*).  While Plaintiff has no problems with tending to her own personal care, she says that her condition makes it hard to bathe and dress herself because of her inability to bend.  (*Id.*).  Plaintiff also states that she needs help from her granddaughter in remembering to take her medication.  (Tr. 387).  Although Plaintiff cooks for

---

[1] A supplemental hearing with the ALJ was held on June 10, 2019.  (Tr. 126-31).  This supplemental hearing was held at the request of Plaintiff's counsel to ensure additional medical evidence was received and admitted into the record. (Tr. 129-30).

[2] On May 23, 2017, Plaintiff's friend, Jean Langley, also submitted a report pertaining to Plaintiff's functional limitations.  (Tr. 393-400).  Ms. Langley's report contained little or no variations from what Plaintiff reported in her own Function Report.

herself every day, she states that her condition makes it hard for her to do so because she is too stressed to focus, and she experiences leg and back pain. (*Id.*).

Overall, Plaintiff reports that her condition affects her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, and get along with others. (Tr. 390). Plaintiff notes that she cannot lift more than five pounds, cannot sit/stand too long without her back hurting, cannot remember anything, and always feels like people who are too close are trying to "get" her. (*Id.*). Moreover, Plaintiff reports that she does not handle stress or change well, and it is hard for her to follow written and spoken instructions. (Tr. 390-91). However, Plaintiff acknowledges that she does not use any assistive devices to walk, has never been fired for failing to get along with others, participates in social activities every day, does her own shopping, handles her own money, goes outside every day, does house and yard work without being encouraged, drives, and takes care of herself and her grandkids that live with her. (Tr. 386-89, 391).

During the February hearing, Plaintiff testified that she had undergone two surgeries on her right rotator cuff, in August 2017 and August 2018, respectively.[3] (Tr. 157, 614-19). Plaintiff further testified that, at that time, she was still undergoing physical therapy for her 2018 surgery. (Tr. 157, 620-27). In addition to attending physical therapy twice a week, Plaintiff also explained that she completes at-home exercises every day for ten minutes in both the morning and the evening. (Tr. 157). Plaintiff takes Lortab for her shoulder pain as well as her back pain, the latter of which is caused a by bulging disc. Plaintiff was first diagnosed with cervical

---

[3] Plaintiff was diagnosed with Arthropathy--right shoulder pain--in May 2016 by Dr. Tummala at East Gadsden Clinic. (Tr. 509). *See* (Tr. 489-512, 705-31 (continuing treatment for Arthropathy and complaints of right shoulder and arm pain)); (Tr. 845-53 (complaining of right shoulder, arm, and neck pain)); (Tr. 527-86 (continuing treatment for right shoulder rotator cuff and complaints of pain in the right shoulder)); (Tr. 610 (finding a full-thickness tear of distal supraspinatus, suspected tear of the long head of the biceps tendon, superior labral fraying without a definite tear in May 2018 by Dr. Simmons)); (Tr. 524-26 (finding a recurrent rotator cuff tear in August 2018 by Dr. Haller)). *But see* (Tr. 596 (finding no significant internal derangement involving the right shoulder in July 2016 by Dr. Simmons)); (Tr. 602 (finding no evidence of a rotator cuff tear in August 2017 by Dr. Simmons)).

degenerative disc syndrome in December 2013 by Dr. Hartzog at Gadsden Orthopedic Associates. (Tr. 852). *See* (Tr. 848-49, 851 (continuing treatment of cervical degenerative disc syndrome and complaints of back pain)); (Tr. 593 (finding small disk protrusion in July 2015 by Dr. Simmons)). *But see* (Tr. 600 (finding normal MRI of the cervical spine and "[t]here is no disk bulge" in July 2017 by Dr. Valentine)). (Tr. 158). Other than taking Lortab to ease her pain, Plaintiff testified that, at the time of the hearing, she was not undergoing any treatment for the bulging disc in her back. (*Id.*).

Plaintiff also testified about problems with both of her hips and her anxiety. (Tr. 158-59). Plaintiff stated that she takes a pill once a week as treatment for the bone mass in her hips.[4] (Tr. 158-59, 798). As for her anxiety disorder, Plaintiff testified that she currently was not attending counseling and had no prior history of attending counseling. (Tr. 159). Although Plaintiff testified that she has never undergone any mental health treatment, she did state that she was on medication for her anxiety—namely, Xanax, Lorazepam, and Ativan.[5] (Tr. 160). When the ALJ asked what side effects Plaintiff experiences from her medication, Plaintiff testified that

---

[4] In January 2017, Dr. Snowden found Plaintiff's bone density exam was consistent with osteopenia throughout the lumbar spine and hips. (Tr. 798). Plaintiff testified that she was scheduled for another bone density exam a week after the hearing. (Tr. 159).

[5] In April 2016, Dr. Tummala diagnosed Plaintiff with anxiety disorder and instructed her to continue taking Lexapro. (Tr. 512). (*See* Tr. 509 (assessing Plaintiff's anxiety disorder and instructed to continue Lexapro in May 2016)); (Tr. 505 (assessing Plaintiff's anxiety disorder and changing her medication to Effexor in September 2016)); (Tr. 502 (assessing Plaintiff's anxiety disorder and changing her medication to Lorazepam in December 2016)); (Tr. 493 (documenting Plaintiff's Lorazepam was filled in January 2017)); (Tr. 495 (assessing anxiety disorder but given no plan in March 2017)); (Tr. 730 (assessing Plaintiff's anxiety disorder and instructed to take Effexor every day and Lorazepam as needed in May 2017)); (Tr. 727 (assessing Plaintiff's anxiety disorder and changing Plaintiff's medication to Venlafaxine every day and continuing Lorazepam as needed in August 2017)); (Tr. 721-24 (not assessing Plaintiff's anxiety disorder but refilling medication in November 2017)); (Tr. 718-20 (not assessing Plaintiff's anxiety disorder but refilling medication in January 2018)); (Tr. 715-17 (not assessing Plaintiff's anxiety disorder but refilling medication in February 2018)); (Tr. 712-13 (assessing Plaintiff's anxiety disorder and refilling medication in May 2018)); (Tr. 710 (assessing Plaintiff's anxiety disorder and refilling medication in October 2018)); (Tr. 707 (assessing Plaintiff's anxiety disorder and instructed to continue current medication, as well as prescribing Alprazolam to be taken three times a day in December 2018)); (Tr. 634 (Dr. Ayanbadejo diagnosing Plaintiff's chest pains as associated with her anxiety disorder in November 2016)).

her Xanax and Ativan make her sleepy, and some of her medications were not mixing well, which made her muscles hurt worse. (Tr. 160-61).

Finally, Plaintiff testified about her physical abilities. Plaintiff stated that Physician Assistant ("PA") Giles instructed her to sit/lay down every two hours and to rest her arm. (Tr. 161). Plaintiff reports that she cannot put her right arm behind her back or raise it straight above her head. (*Id.*). Additionally, Plaintiff stated that she could only lift less than ten pounds with her right arm and just at ten pounds with her left (Tr. 162), and the highest she could raise her right arm was to the height of her shoulder. (Tr. 163). However, she further testified that she could use her left arm to pick things up from the table and the ground. (Tr. 163).

After the ALJ reviewed Plaintiff's medical history, the hearing shifted to a discussion about Plaintiff's everyday activities. Plaintiff testified, consistent with her Function Report, that she cooks for herself and her grandkids, cleans the house and does the laundry, shops for the groceries, and controls her own finances. (Tr. 163-64).

When questioned by her attorney, Plaintiff explained how her anxiety gives her panic attacks and how that anxiety medication makes her sleep up to three hours a day. (Tr. 165-66). In addition, Plaintiff noted that her medication makes her sleepy and she does not feel safe driving while taking it. (Tr. 167). Lastly, Plaintiff explained that in between completing household chores, she likes to rest for forty-five minutes to an hour, as well as alternate between sitting and standing every thirty-five to forty minutes. (167-68).

At the conclusion of this hearing, the Vocational Expert, Diana Kizer, testified that, in her opinion, Plaintiff cannot perform in her past employment given her RFC; however, the VE opined that there were other jobs in the national economy that Plaintiff could perform such as booth cashier and officer helper. (Tr. 171).

## II.   ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant

is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2022. (Tr. 112). Moreover, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 1, 2016, which is the alleged onset date of Plaintiff's disability. (*Id.*). The ALJ also found that Plaintiff had the following severe impairments: degenerative disc disease (disorders of back discogenic and degenerative) and other disorders of bone and cartilage (osteoporosis). (*Id.*). However, the ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 114).

After examination of the entire record, the ALJ concluded that Plaintiff has the RFC to perform light work with the following limitations: can "occasionally clim[b] ramps or stairs; never clim[b] ladders, ropes, or scaffolds; occasionally balance[e], stoo[p], knee[l], crouc[h] or craw[l]; never reac[h] overhead with the right upper extremity; frequently handl[e] and finge[r] with the right upper extremity; she must also avoid all exposure to unprotected heights; she must also alternate sitting and standing every 20-30 minutes throughout the workday in order to change positions for a brief positional change of less than 5 minutes but without leaving the workstation; and time off task can be accommodated by normal work breaks." (Tr. 114). In reaching her decision, the ALJ noted that Plaintiff's statements concerning the intensity,

persistence, and limiting effects of her medical conditions were not entirely consistent with the medical evidence and other evidence on record.  (Tr. 116-17).

The ALJ found that Plaintiff reported difficulties with lifting over five pounds, squatting, bending, standing, sitting, kneeling, stair climbing, memory, completing tasks, concentration, getting along with others, walking more than fifteen minutes, engaging in social activities, and handling stress and change.  But, Plaintiff also reported she has had custody of her three grandchildren since 2011, can walk two blocks, lift less than ten pounds, raise her left arm, raise her right arm to her shoulder, squat to pick things up, complete household chores like cleaning, laundry, and cooking, and work a part-time job.  (Tr. 115).  The ALJ also found Plaintiff is engaged in activities that involve handling money, shopping, watching TV, and utilizing her computer for social media.  (Tr. 116).

Additionally, in terms of Plaintiff's degenerative disc disease, the ALJ found that from July 2015 to May 2019, Plaintiff's medical testing showed only mild to moderate osteopenia in her lumbar spine and hip area (which she continues to take medication for), and mild broad based disc bulging in her back, which she has received no treatment for since 2017 aside from pain medication and injection therapy.  (*Id.*).  While Plaintiff has undergone two surgeries on her right shoulder, she has continued physical therapy and at-home exercises that have allowed her to make fair progress in the mobility of her shoulder (despite her continued limitations in her range of motion).  (*Id.*).

Finally, the ALJ found the opinions of Dr. Tummala and PA Giles were not persuasive, "as [those] opinions [were] not consistent with each other or consistent with the records indicating only some limitations in the right shoulder but normal strength, gait, and range of

motion."[6]  (Tr. 117, 844).   As the ALJ noted, although Dr. Tummala suggests Plaintiff's limitations date back to the alleged onset date, his records do not go back that far.  (*Id.*). Additionally, the ALJ explained that imaging and treatment notes in the record indicate only mild cervical spondylosis, early degenerative disc disease, and normal findings in relation to ambulation, gait, strength, and movement of all extremities, which is inconsistent with both Dr. Tummala and PA Giles' opinions.  (*Id.*).

For these reasons, the ALJ determined that because of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and therefore, has not been under a disability as defined in the Act since May 12, 2016.  (Tr. 19-20).

## III.   Plaintiff's Arguments for Remand

Plaintiff presents a number of arguments in support of remand.  First, she argues that the ALJ erred in rejecting the treating physician rule, and in turn, erred in rejecting the opinion of Dr. Tummala.  (Doc. #14 at 1-2).  Second, Plaintiff contends that the ALJ erred under SSR 96-8p in finding that Plaintiff has the RFC to perform light work as opposed to sedentary work, and, but for this error, Plaintiff meets Grid rule 201.09 or 210.10.  (*Id.* at 2).  Third, she argues that the ALJ erred in assessing her daily activities when determining the persuasiveness of her

---

[6] Dr. Tummala notes in Plaintiff's mental health source statement that, dating back to her alleged onset date, Plaintiff: (1) cannot interact with supervisors or co-workers, (2) would be off-task 50% in an eight-hour day, (3) would fail to go to work ten out of every thirty days, and (4) cannot understand, remember, or carry out simple instructions.  (Tr. 855).  In Plaintiff's physical capacities form, Dr. Tummala notes that dating back to Plaintiff's alleged onset date, Plaintiff: (1) would be expected to lie down or sit down with her legs propped up for two hours out of the eight-hour workday, (2) would be off-task 50% in an eight-hour day, and (3) would fail to go to work twelve out of every thirty days.  (Tr. 854).  However, PA Giles states in Plaintiff's physical capacities form that dating back to Plaintiff's alleged onset date, Plaintiff: (1) can sit upright for six hours at a time in a standard chair, (2) can stand for two hours at one time, (3) would be expected to sit down or lie down for thirty minutes out of an eight-hour workday, (4) would be off-task 5% in an eight-hour workday, and (5) would fail to go to work five out of every thirty days.  (Tr. 844).

statements.  (*Id.*).  Finally, Plaintiff contends that the ALJ's decision at step five is not supported by substantial evidence.  (*Id.*).

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## V.      Discussion

After careful review, the court concludes that the ALJ did not err in his findings or conclusions, and the same was supported by substantial evidence.

### A.      The ALJ Properly Rejected the Treating Physician Rule and Dr. Tummala's Opinion

Although Plaintiff concedes that the new regulations apply, she avers that they did not abolish the treating physician rule under Eleventh Circuit Precedent.  (Doc. #14 at 22).  The court disagrees.

In support of this argument, Plaintiff cites *Rose v. Saul*, in which the court held that the new regulations did not supersede Fourth Circuit's precedent.  No. 7:19-CV-91-BO, 2020 U.S. Dist. LEXIS 146360, at *8-11 (E.D.N.C. Aug. 14, 2020).  The *Rose* court concluded that the ALJ relied on a "fundamental misunderstanding of *Bird*" in assuming that the new regulations superseded Fourth Circuit precedent.  *Id.*  ("*Bird* did not interpret a prior regulation, alterable by SSA. Rather, *Bird* followed a line of cases expounding on what is required from the ALJ to enable the Court to conduct its review.").

However, this case is distinguishable from *Rose*.  In *Rose*, the Department of Veterans Affairs assigned the plaintiff a 100% disability rating, and the ALJ did not discuss, nor mention, the plaintiff's VA disability rating. *Id*. at *8. By contrast, in this case, the ALJ explained that he considered Dr. Tummala's opinion to be unpersuasive "as the opinion[n] [was] not consistent with [PA Giles' opinion] or consistent with the records indicating only some limitations in the right shoulder but normal strength, gait, and range of motion."  (Tr. 117).

Furthermore, unlike Fourth Circuit precedent, the Eleventh Circuit does not recognize the treating physician rule as independent from the regulations.  In an unreported opinion, the Eleventh Circuit expressly held that, "[f]or claims filed on or after March 27, 2017, … no

significant weight is given to statements made by treating physicians as opposed to non-treating medical sources." *Planas ex rel. A.P. v. Comm'r of Soc. Sec.*, 842 F.App'x 495, 497 n.1 (11th Cir. 2021). Because Plaintiff applied for benefits after March 27, 2017, the ALJ did not err in applying the new Social Security regulations for evaluating medical evidence.

The new regulations substantially alter the way in which an ALJ is to consider medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c (2021). The new regulations abandon the term "treating source" and provide that the ALJ "will not defer or give any specific evidentiary weight, including control weight, to any medical opinion(s) or prior administrative medical finding(s), including those from *your medical sources*." 20 C.F.R. § 404.1520c(a) (emphasis added). The new regulations further require an ALJ to determine and "articulate in [his or her] . . . decision how *persuasive* [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b) (emphasis added).

In evaluating the persuasiveness of a medical opinion or prior administrative medical finding, an ALJ looks to five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(a)-(c). The "most important factors," however, are supportability and consistency, and an ALJ is required to explain the application of those factors in the decision. 20 C.F.R. § 404.1520c(b)(2). By contrast, the ALJ may (but is not required to) explain how the other factors were considered unless it is determined that two or more medical opinions or administrative medical findings are both equally well-supported and consistent. 20 C.F.R. § 404.1520c(b)(2)-(3). Lastly, when a medical source provides more than one opinion or finding, the ALJ need not articulate how he or

she considered those opinions individually, but rather may evaluate the persuasiveness of the opinions and findings "together in a single analysis."  20 C.F.R. § 404.1520c(b)(1).

The court concludes here that the ALJ properly evaluated Plaintiff's medical records, and in doing so, correctly rejected Dr. Tummala's opinion.  Dr. Tummala opined that, dating back to her alleged onset date, Plaintiff: (1) could not interact with supervisors or co-workers, (2) would be off-task 50% in an eight-hour day, (3) would fail to go to work ten out of every thirty days, and (4) could not understand, remember, or carry out simple instructions.  (Tr. 855).  Moreover, Dr. Tummala further opined that, dating back to her alleged onset date, Plaintiff: (1) would be expected to lie down or sit down with her legs propped up for two hours out of the eight-hour workday, (2) would be off-task 50% in an eight-hour day, and (3) would fail to go to work twelve out of every thirty days.  (Tr. 854).

But as the ALJ found, Dr. Tummala's assessment is inconsistent with and unsupported by not only PA Giles' assessment but also other portions of the medical record, including imaging and treatment notes.[7]  (Tr. 117).  The ALJ specifically noted that the imaging results in the record indicate only mild cervical spondylosis and early degenerative disc disease, and the treatment notes reflect a normal finding in relation to ambulation, gait, strength, and movement of all extremities and cardiovascular and respiratory systems.  (*Id.*).  The ALJ also noted that Dr. Tummala's own records supporting his opinion of Plaintiff's limitations do not extend to the alleged onset date.  (*Id.*).

Accordingly, the court concludes the ALJ properly assessed Dr. Tummala's opinion under the new regulations, substantial evidence in the record supports the ALJ's findings, and the

---

[7] The ALJ also found that PA Giles' assessment is unpersuasive for the same reasons as Dr. Tummala's, but Plaintiff has not contested the ALJ's conclusion related to PA Giles' assessment.  (Tr. 117); (Doc. #14 at 19-29).

ALJ did not err in finding that Dr. Tummala's opinion was inconsistent with and unsupported by the medical evidence.

**B.      The ALJ Did Not Err in the Assessment of Plaintiff's RFC**

Plaintiff next argues that the RFC determination was conclusory and violates SSR 96-8p. (Doc. #14 at 29).   Specifically, Plaintiff avers the ALJ did not consider Plaintiff's pain purportedly caused by her degenerative disc disease and disorders of the bone and cartilage, including osteoporosis.  (*Id.*).  The court cannot agree.

SSR 96-8p spells out certain policies regarding the assessment of a claimant's RFC and that regulation calls upon the ALJ to describe how the evidence supports a conclusion with "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)."  SSR 96-8p, 1996 WL 374184, at *7 (July 12, 1996).  Additionally, the ALJ must describe how the evidence supports the conclusions reached and why "reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  *Id.*  However, "even when the ALJ could have been 'more specific and explicit'" the ALJ's findings will "nonetheless meet the requirement under 96-8p if the ALJ considered all of the evidence."  *Freeman v. Barnhart*, 220 F.App'x 857, 959 (11th Cir. 2007).

In this case, as the ALJ discussed, the record evidence as a whole supports an RFC to perform a range of light work with additional limitations.  (Tr. 114-17). As previously discussed, the ALJ found that although Plaintiff reports difficulties with lifting over five pounds, squatting, bending, standing, sitting, kneeling, stair climbing, memory, completing tasks, concentration, getting along with others, walking more than fifteen minutes, engaging in social activities, and handling stress and change, she also reports that she has had custody of her three grandchildren

since 2011, can walk two blocks, can lift less than ten pounds, can raise her left arm, can raise her right arm to her shoulder, can squat to pick things up, can complete household chores like cleaning, laundry, and cooking, and is able to work a part-time job.  (Tr. 115).  The ALJ also found Plaintiff has engaged in activities that involve handling money, shopping, watching TV, and utilizing her computer for social media.  (Tr. 116).

Additionally, in terms of Plaintiff's degenerative disc disease, the ALJ found that from July 2015 to May 2019, Plaintiff's medical testing showed only mild to moderate osteopenia in her lumbar spine and hip area (for which she continues to take medication), and mild broad-based disc bulging in her back (for which she has received no treatment since 2017 other than pain medication and injection therapy with good results).  (*Id.*).  Although the ALJ also noted Plaintiff has undergone two surgeries on her right shoulder, the ALJ also found that the record evidence shows Plaintiff's continued physical therapy and at-home exercises have allowed her to make fair progress in the mobility of her shoulder, despite any limitations in her range of motion. (*Id.*).  The ALJ reached the RFC determination "[a]fter careful consideration of the entire record" and Plaintiff's subjective complaints.  (Tr. 115).

The ALJ fully complied with SSR 96-8p because he gave a narrative discussion and assessment of the medical and nonmedical evidence in making his decision.  Further, his RFC determination is supported by substantial evidence in the record.

**C.**     **The ALJ Did Not Err in His Evaluation of Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ erred in holding that her daily activities diminish the persuasiveness of her subjective complaints.  (Doc. #14 at 33).  That argument misses the mark.

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying

medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). *See also* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 16-3p, 2016 WL 119029 (Mar. 16, 2016). So long as the initial burden is satisfied, the ALJ will evaluate the intensity and persistence of the claimant's alleged symptoms and the effect of those on the claimant's ability to work. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). In making such evaluation, the ALJ will consider the objective medical evidence, the nature of the claimant's symptoms, the claimant's daily activities, any precipitating and aggravating factors, the effectiveness of the medication, treatment sought for relief of symptoms, any measures the claimant takes to relieve the symptoms, and any conflicts between the claimant's statements and the rest of the record. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

An ALJ must clearly "articulate explicit and adequate reasons" to discredit a claimant's statements. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). However, on appeal, generally "[t]he question is not . . .whether [the] ALJ could have reasonably credited the claimant's testimony, but whether the ALJ was *clearly* wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F.App'x 935, 939 (11th Cir 2011) (emphasis added). Thus, courts in our Circuit will not disturb a clearly articulated finding discrediting a claimant's statements so long as the finding is supported by substantial evidence. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). Here, Plaintiff claims that the ALJ's decision is due to be reversed because the ALJ erred in evaluating her daily activities as a part of his application of the pain standard.

The ALJ noted that the impairments Plaintiff claims to cause her underlying medical condition could reasonably be expected to cause her alleged symptoms. (Tr. 115). Nonetheless, the ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effect of her alleged symptoms were not entirely consistent with the medical evidence and nonmedical evidence on the record.[8] (Tr. 115-16). In support of this decision, the ALJ evaluated the objective medical evidence, treatment history, and daily activities. (Tr. 114-17).

The ALJ initially evaluated the evidence in terms of Plaintiff's degenerative disc disease. (Tr. 116). Citing specific evidence, the ALJ concluded that Plaintiff's imaging studies do not support a finding of disability. The ALJ specifically examined Plaintiff's MRI results of the cervical spine area from July 2015 and July 2017, Plaintiff's MRI results of the lumbar spine from June 2016, May 2017, and May 2019, and Plaintiff's bone density report from January 2017.[9] (*Id.*). The ALJ also noted Plaintiff's continued treatment for her osteopenia. (*Id.*).

In addition to these imagining studies, the ALJ also evaluated Plaintiff's treatment notes. (*Id.*). The ALJ found, notwithstanding complaints of radiating back pain, Plaintiff had normal findings in relation to the range of motion, motor and sensory function, gait, and muscle strength. (*Id.*). The ALJ also found that her medical records show Plaintiff has not received any treatment for her back condition since 2017 outside of pain medication and injection therapy (with good results for both). (*Id.*).

---

[8] The ALJ also noted that, just as with Plaintiff's statements, the almost identical third-party statements of her friend, Jean Langley, were not entirely creditable as there is record evidence that is inconsistent with her statements. (Tr. 115).

[9] The ALJ found, "[f]ollowing reports of lower back pain[,] … intermittent numbness and tingling[,] … and a vague feeling of heaviness in muscles when walking/standing[,] … repeated MRI of the lumbar spine in May 2017 was revealing for only early degenerative disc disease … with mild broad based bulging …." (Tr. 116). As for the repeated MRI of the cervical spine in July 2017, the ALJ found that the results were "normal with a notation that the prior changes [found in the July 2015 MRI] were no longer evident." (*Id.*). Lastly, the ALJ found Plaintiff's last MRI of the lumbar spine in May 2019 "was revealing for only a small broad based bulge …."

Next, the ALJ evaluated the evidence about Plaintiff's right shoulder and looked at specific evidence. (*Id.*). The ALJ found that Plaintiff's treatment history for her right shoulder consists of medication, injection therapy, and right shoulder rotator cuff repairs in August 2017 and August 2018, followed by physical therapy through November 2018. (*Id.*). Thus, the ALJ noted that although Plaintiff's range of motion and use of her right arm and shoulder is limited, she made fair progress in her physical therapy, continued at-home exercises, and her treatment notes demonstrate normal findings in relation to muscle tone and strength, movement of all extremities, and motor strength bilaterally with no tenderness. (*Id.*).

Finally, the ALJ also assessed Plaintiff's daily activities – *i.e.*, the fact that Plaintiff cared for the personal needs of not only herself but also her three grandchildren, prepared meals, drove, did laundry, and performed household chores. (*Id.*). Additionally, the ALJ noted Plaintiff successfully managed social interactions while taking her grandchildren to and from school, grocery shopping, and even working part-time. (*Id.*). The ALJ also concluded that Plaintiff has engaged in activities that indicate some degree of concentration such as handling money, shopping, watching television, paying bills, and using her computer for Facebook. (*Id.*).

Plaintiff's main contention is that the ALJ erred in considering her daily activities in his evaluation. But, her argument that a claimant's daily activities cannot be examined in an ALJ's evaluation of a claimant's subjective statements is misplaced. *See Dyer*, 395 F.3d at 1212 (holding that the ALJ properly relied on the claimant's daily activities); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (holding that an ALJ may consider daily activities in assessing a claimant's statements); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, … that does *not* mean it is improper

for the ALJ to consider a claimant's daily activities *at all*." (emphasis added)).   Further, as discussed above, Plaintiff's daily activities were merely one factor in the ALJ's assessment of Plaintiff's statements or conclusion she was not disabled; therefore, the court cannot conclude that the ALJ erred in discrediting Plaintiff's statements.  The ALJ's determination is supported by substantial evidence.

**D.    The ALJ's Decision Was Supported by Substantial Evidence**

Plaintiff's last argument is that the ALJ's decision was not based on substantial evidence because he erred (1) in holding she could perform light work, (2) by not considering Grid Rule 201.09 or 201.10, (3) in considering her daily activities in his evaluation of her statements, and (4) in relying on the VE's testimony.   (Doc. #14 at 35).  The court does not agree.

As to Plaintiff's first three arguments, the court has explained above why the ALJ did not err in finding that Plaintiff could perform light work, in not considering Grid Rules 201.09 or 201.10, and in taking into account Plaintiff's daily activities in his evaluation.  Thus, the court turns to Plaintiff's fourth argument related to the VE's testimony.

A VE's testimony may provide substantial evidence to support an ALJ's step-five finding that there are other jobs in significant numbers in the national economy that a claimant can perform.  *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007).   Such testimony may constitute substantial evidence when the ALJ poses "a hypothetical question which comprises all of the claimant's impairments."  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *see also* 20 C.F.R. §§ 404.1560(b).  However, an ALJ is "not required to include findings in the hypothetical that [were] properly rejected as unsupported."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

At the February 2019 hearing, the ALJ obtained testimony from a VE.  (Tr. 168-74).  The ALJ posed a hypothetical question asking the VE whether a person of Plaintiff's age, education, and past work experience with the same limitations included in Plaintiff's RFC could perform work.  (Tr. 171).  The VE testified that such a person could perform jobs existing in significant numbers in the national economy such as booth cashier, office helper, and bench assembler.  (Tr. 171-72).

Plaintiff argues that the hypothetical question relied upon did not accurately state Plaintiff's pain level or RFC.  (Doc. #14 at 35).  Specifically, Plaintiff challenges the hypothetical question because it assumed Plaintiff could perform light work and further contends that the ALJ should have relied on a hypothetical later given by Plaintiff's attorney based on sedentary work.  (Doc. #14 at 35-37).  The court has already addressed and rejected this argument.  As mentioned above, the ALJ did not err in determining Plaintiff could perform light work as opposed to sedentary work.  Thus, the ALJ did not err in posing the question to the VE and relying on the VE's testimony.  The ALJ's determination was supported by substantial evidence.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this January 3, 2022.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

20